UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 2 4 2005

A     ONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-527-GWU

VIRGINIA TAYLOR,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to

1

Taylor

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)?  If yes, the claimant is disabled.  If no, proceed
        to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?  If yes, the claimant was not
        disabled.    If no, proceed to Step 7.    See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.    See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Taylor

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Taylor

or obtain treatment to remedy his condition. McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Taylor

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Taylor

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Virginia L. Taylor, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of degenerative disc disease,

osteoarthritis, and a depressive disorder. (Tr. 20). Nevertheless, based in part on

the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ

determined that Mrs. Taylor retained the residual functional capacity to perform a

significant number of sedentary level jobs existing in the economy and, therefore,

was not entitled to benefits. (Tr. 21-5). The Appeals Council declined to review, and

this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age, education, and work experience could perform any jobs if she

were limited to sedentary level exertion, and also had the following non-exertional

impairments. (Tr. 438). She: (1) could stand and walk only two hours in an eight-

hour day, but could sit for six hours; (2) could not perform any pushing or pulling with

7

Taylor

the left leg; (3) could not kneel, crawl, or climb ladders, ropes, or scaffolds; (4) could occasionally stoop and crouch; (5) should have no exposure to temperature extremes or vibration; and (6) was able to carry out simple instructions, relate co-workers and supervisors, and adapt to changes in routine work settings. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 439).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to a herniated lumbar disc, left knee pain, headaches, heart arrhythmia, and leg pain. (Tr. 71).

Medical evidence in the transcript includes reports from the plaintiff's treating neurosurgeon, Dr. Philip Tibbs, who treated her both before and after an August, 2000 fall which exacerbated pre-existing back and knee problems (e.g., Tr. 146-53), and from her treating orthopedic surgeon, Dr. Gregory D'Angelo. Although an MRI of the lumbar spine in October, 2000 was read as showing a broad posterior herniation at L5-S1 which might entrap the left nerve root (Tr. 159), neither Dr. Tibbs nor Dr. D'Angelo considered surgery to be the plaintiff's best option (Tr. 178, 210). The examinations conducted by Dr. Tibbs showed normal motor strength, equal

Taylor

reflexes, imtact sensation, and negative straight leg raising. (Tr. 176). Dr. D'Angelo

performed arthroscopic surgery on the plaintiff's left knee in September, 2001 to

repair a medial meniscus tear, but noted that the operation would only be a partial

help because of osteoarthritic changes which had resulted in eburnated bone[1] and

Grade 4 chondromalachia. (Tr. 210-11). After a period of physical therapy, Dr.

D'Angelo ordered a Functional Capacity Evaluation (FCE) in October, 2001 which

showed a capacity for light level exertion, that is, lifting up to 20 pounds occasionally.

(Tr. 209, 368). The FCE also suggested that standing and walking should be limited

to an occasional basis. (Tr. 368). Dr. D'Angelo commented that the plaintiff's knee

looked good on examination, with no significant effusion, heat, or redness, and her

range of motion was good. (Tr. 209). However, the osteoarthritic changes would

result in a permanent partial disability rating which he eventually determined to be

29 percent. (Tr. 208-9). He reiterated, however, that he intended "to get her into a

job" within her capabilities. (Tr. 209).

Although the plaintiff's treating physician, Dr. Steven Morgan, submitted office

notes reflecting treatment, primarily medications, he did not list any functional

impairments. Apparently based on statements by the plaintiff, his December 4, 2001

---

[1]Eburnation connected with osteoarthritis involves the thinning of the articular
cartilage due to disorganization and fragmentation of the superficial tissue and extension
of the degenerative changes to the deeper part of the cartilage, resulting in exposure of
the subchondral bone, which becomes more dense and the surface of which becomes
worn and polished. Dorland's Illustrated Medical Dictionary (27th Ed.) at. p. 525.

Taylor

office note states that the plaintiff's "recent neurosurgeon consultation indicates permanent disease with need for retirement," but his examination at the time disclosed only lumbar tenderness, "some moderate reduced lumbar function," and right sacroiliac joint tenderness. (Tr. 244). He did not himself voice any specific functional restrictions, nor indicate that the plaintiff was disabled.

In view of the fact that Dr. D'Angelo was the only treating physician to give an opinion regarding functional capacity, the ALJ could reasonably have followed his restrictions. In fact, the ALJ imposed greater functional restrictions than Dr. D'Angelo, or state agency reviewing sources. (Tr. 285-301). Therefore, this portion of the decision is clearly supported by substantial evidence.

Regarding the plaintiff's mental restrictions, there were two one-time psychological evaluations, as well as treatment notes from the Comprehensive Care Center (CCC).

Reba Moore, M.A., a certified psychologist with a autonomous functioning, examined Mrs. Taylor in October, 2001, and diagnosed a depressive disorder, mild mental retardation, and a dependent personality disorder. (Tr. 204). IQ testing produced a full-scale score of 62, which was felt to be accurate, and achievement tests showed a third-grade reading and arithmetic ability. (Tr. 202). However, the plaintiff did not bring her glasses to the examination and complained of some difficulty in seeing visual tasks. (Tr. 201). Ms. Moore interpreted certain other

Taylor

testing, including the Bender Gestalt, as showing **attitudes of inferiority and dependency**. (Tr. 202-3). She completed a mental **residual functional capacity assessment** indicating that the plaintiff was "seriously **limited but not precluded" in most areas**. (Tr. 205-6).

Dr. Gary Maryman, Psy. D., also **conducted a one-time examination of the plaintiff, in February, 2004**. (Tr. 342). At this examination **the plaintiff brought her glasses**. (Id.). Dr. Maryman noted that she was in no **acute emotional distress, related fairly well, and showed no signs of anxiety, timidity, nor significant depression**. (Tr. 343). Mrs. Taylor stated that she was **a patient at the CCC for her "nerves," but had not been given any medications or apparently been seen by the staff psychiatrist**. (Id.). Dr. Maryman administered **many of the same tests as Reba Moore but, in this case, the psychologist felt that effort on testing was marginal at best**. (Id.). IQ scores were virtually the same as those **obtained by Reba Moore, with a full-scale score of only 62, but** Dr. Maryman, **who had access to the previous testing, reiterated that this did not appear to be the plaintiff's best effort and that the scores were not a reliable indicator of her intellectual functioning, which he estimated to be in the low average range**. (Tr. 345). Achievement testing showed a **fourth-grade reading level, which, once again, Dr. Maryman considered to be fairly low especially considering that the plaintiff listed reading as one of her favorite pastimes**.

11

Taylor

He ultimately diagnosed malingering and a depressive disorder, with a current GAF score of 64 (Tr. 346), reflecting only mild symptoms.  Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34.  He prepared a mental residual functional capacity assessment indicating that the plaintiff had at least a "limited but satisfactory" ability in all areas, except for a "seriously limited but not precluded" ability to understand, remember, carry out complex job instructions. (Tr. 348-9).

Treatment notes from the CCC show that Mrs. Taylor was seen by a counselor beginning in late 2002, and was given a diagnosis of anxiety disorder due to general medical condition with a GAF of 65.  (Tr. 266, 269).  On the last reported visit in November, 2003, the plaintiff told her counselor that she was "doing OK" and would see if her family physician could adjust her Zoloft.  (Tr. 362).  It is not clear from the contemporaneous notes of Dr. Morgan that he was prescribing Zoloft, however.  (Tr. 238-43, 355-60).

The ALJ sought testimony at the administrative hearing from the ME, Dr. Neil Lewis, a psychologist.  Dr. Lewis testified that, viewing the record as a whole, he felt that Mrs. Taylor only had some mild anxiety and depression, and that the record did not document mental retardation or borderline intellectual functioning.  (Tr. 429).  He opined that Dr. Maryman's assessment was consistent with the record as a whole,

12

Taylor

including the CCC records, and gave several reasons for discounting Reba Moore's more severe conclusions, particularly the fact that the plaintiff had not brought her glasses to the evaluation on that day. (Tr. 430-1). He also felt that a person with mild mental retardation would not have been able to function in the plaintiff's job as a cook for 12 years. He concluded that Mrs. Taylor had no impairment in her ability to understand, remember, and carry out simple instructions, adapt to changes in the work setting, or interact with co-workers, supervisors, or the public, but that she would have a mild impairment with detailed but not complex job instructions, and would have difficulty with complex instructions. (Tr. 434-5).

In view of the ME's testimony, the psychological factors in the hypothetical question are supported by substantial evidence.

The decision will be affirmed.

This the ___24___ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13